## STATE v. FRANK ELLIS.[1]

February 26, 1937.

No. 31,009.

*Neil Hughes* and *Walter J. Welch,* for appellant.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *Ed J. Goff,* County Attorney, and *Arthur Markve,* Assistant County Attorney, for the State.

HOLT, JUSTICE.

Defendant, convicted of a violation of 2 Mason Minn. St. 1927, § 10128, appeals from the order denying a new trial and from the judgment. Two main grounds are urged for a reversal: (a) The verdict is contrary to the evidence and the law; and (b) the court erred in certain specified instructions.

[1]Reported in 271 N. W. 594.

That part of § 10128 which defendant was charged with transgressing reads: "Every person who shall take a female under the age of eighteen years, for the purpose of prostitution or sexual intercourse, * * * shall be guilty of abduction and punished," etc. The indictment as amended charged that defendant, on March 22, 1934, did wilfully, unlawfully, knowingly, and feloniously take a named unmarried female to a certain room in the Ritz Hotel, in the city of Minneapolis and county of Hennepin, Minnesota, for the purpose and with the intent that she should then and there have sexual intercourse with one Walter Liggett, a male person. We shall refer to the young girl named in the indictment as Frances and to her companion as Tressa. The girls lived in Austin, Minnesota, as likewise did defendant. Frances testified that she was not 18 years of age until September 14, 1934, the offense being alleged as committed on March 22, 1934. Tressa was almost a year younger. These girls had been acquainted with defendant for some time, and had accompanied him three or four times in his car to Albert Lea when he had occasion to go on his missions as organizer of labor unions. The girls would attend dances or entertainments and ride back with him when he had finished his work. They had expressed to him their desire to go with him to Minneapolis, where Frances had relatives. The evidence of the state was that they left Austin about four o'clock in the afternoon of March 22, 1934, all three sitting in the front seat of defendant's car. They stopped in Faribault, where defendant purchased a quart of wine, of which all three drank on the way. At one time defendant spoke of perverted sexual relations between men and women and of the demands of his wife in such terms that one of the girls told him that he ought to be ashamed of speaking of his wife in that manner. They arrived at the Ritz Hotel in Minneapolis at about eight o'clock in the evening, and defendant said it was too late to find the relatives of Frances and proposed that they stay at the hotel and he would pay for the room, as the girls had little or no money. He secured two rooms opening on different corridors, but with a connecting bathroom. He registered the girls in his own name, telling them

that it would look better if they were taken as his sisters. After dinner the three went up to the rooms. They all entered the one room, and the girls went into the bathroom and took a bath. Frances came out dressed only in pajamas. Tressa redressed. While taking their baths the girls heard the telephone in the room ring, and defendant answered the ring, but they could not hear what he said. When they came out he said one Mr. Liggett would be up, and he wanted them to meet him, as he was an intelligent and well informed person. Directly Walter Liggett came and was introduced to the girls. Soon more wine was drunk, and Liggett sent for some beer, which was drunk mostly, if not all, by the men. It seems that about this time defendant and other labor leaders at Austin were interested in having a labor paper published there with Liggett as the editor. The two men talked about that for awhile, and then Liggett asked Frances to go into the other room as he wished to talk with her. She demurred, but she went when defendant said it was all right; that Liggett would not harm or hurt her; and also Tressa told her to go and if Liggett "got funny with her" she could come back or "holler." She went in and, after sitting on the bed for awhile, lay down under the covers. Liggett turned out the light and took down or off her pajamas. She appears to have offered no particular objections until he attempted the perverted practices about which defendant had spoken on the way. She then jumped out of bed and ran into the other room, locking the bathroom door after her. She woke Tressa, who was sleeping beside defendant, and told her Liggett was one of "that kind." Tressa said she did not believe it. Frances said she could prove it. She unlocked the bathroom door and lay down beside Tressa. Liggett came in and, when assured by Frances that defendant and Tressa were asleep, proceeded as before, and when Tressa was satisfied that Liggett was doing what Frances had complained of, she crawled over the sleeping defendant and turned on the light. Liggett then went out. The girls awoke defendant and told him what had occurred. At first he said he could not believe it, but finally professed to be convinced; and then asked the girls to remember

it so that, if Liggett did not do the right thing when he became editor, they could use the matter to force him into the proper way. The three slept in the same bed the remainder of the night. Tressa said she was awake next morning when defendant was ready to leave. He spoke to her and left some money for them on the bed. Frances did not know when defendant left in the morning. Liggett came up after the girls arose and took them to breakfast. Later in the day defendant came to the hotel, and the girls went with him back to Austin. On the way he again reminded them to remember Liggett's doings in case it should be necessary to control him. Defendant and Liggett denied the story of the girls as to every statement which tended to sustain the indictment.

The verdict is claimed to be contrary to the law and the evidence as to the taking, as to the intent, and as to the age. As to the taking, the comments in State v. Lauzer, 152 Minn. 279, 188 N. W. 558, are so pertinent that further discussion is unnecessary. The inception of the taking, the jury may well have considered to be defendant's immoral talk with the girls, and the consummation thereof when, near midnight, he advised Frances to go with Liggett into the adjacent bedroom. People v. Plath, 100 N. Y. 590, 3 N. E. 790, 53 Am. R. 236, is cited and relied on by defendant. But the facts there were so different from those proved by the state in the instant case that the decision can be no guide. Moreover, at that time, the decision states, the age of consent was ten years in that state. More in point is People v. Seeley, 37 Hun, 190, affirmed without opinion (about one year after decision in People v. Plath, 100 N. Y. 590) in People v. Seeley, 101 N. Y. 642. Another New York case supports this conviction: People v. Deckenbrock, 157 App. Div. 379, 142 N. Y. S. 278, which also illustrates how intent may be charged against a hotel clerk who let a room to which a girl under the prohibited age is taken for sexual relations. State v. Duffy, 55 S. D. 110, 225 N. W. 61, cited by defendant, was reversed for lack of proof of any intent on the part of defendant to have immoral relations with the girl he was charged with abducting. It seems that in State v. Marsh, 158 Minn. 111, 196 N. W. 930, part

of the abduction statute under which defendant was convicted was narrowed so that the purpose of the taking must be for prostitution and not for an isolated illicit intercourse with the abductor. But the intent and purpose in the instant case could well be found by the jury to be prostitution. Defendant knew that Liggett was a perfect stranger to Frances. About midnight he remains in a bed-room with Tressa, a girl under 17; he tells Frances to go with Liggett into the bedroom he, defendant, has engaged. The light in defendant's room is turned out. From what talk was had on the road, the telephone conversation when the girls were taking their bath, his notifying the girls that Liggett was coming up, and his wishing them to meet him, the jury could infer that the intention in taking Frances to these rooms and telling her to go with Liggett into the one room was for the purpose of prostitution. It is immaterial whether or not Liggett desired Frances for sexual intercourse or sodomy.

Lastly, it is claimed that there was no corroboration as to Frances' age. No point was made of age on the trial. She testified she was 18 years old September 14, 1934. She was not even cross-examined as to her age. Tressa testified that she lacked about three months of being 17 years of age at the time of the offense. With the two girls in court, their appearance could be considered by the jury in corroboration of the testimony of Frances as to her age. In People v. Ragone, 54 App. Div. 498, 67 N. Y. S. 23, it was held that the jury might find corroboration of the female's testimony of her age in her appearance; but there was a reversal for error in refusing to charge that the jury had a right to consider not only the change in her appearance but the absence of documentary evidence of age in possession of a witness. There the age was sharply raised at the trial. See also Hermann v. State, 73 Wis. 248, 41 N. W. 171, 9 A. S. R. 789.

Error is assigned on portions of the charge. In each of the portions so assigned the jury were instructed, in substance, that if defendant, with the intent and purpose that Frances should have sexual intercourse with Walter Liggett, induced, persuaded, or in-

veigled her to enter the room at the Ritz Hotel, and that if Frances was then under 18 years of age, defendant would be guilty of the crime charged. It is claimed that the state, in the court below, asserted that the indictment charged the crime of taking Frances to a house of ill fame under subd. 2, of § 10128. It does not so appear from the record. The indictment clearly charged the violation of that part of subd. 1 of the section first above set out. We are also of the opinion that if it were the intent of defendant in taking Frances to the rooms in the Ritz Hotel for the purpose of sexual intercourse with Walter Liggett, a total stranger to her, and with that purpose defendant advised her to go with Liggett into the one unoccupied bedroom, it was equivalent to taking her or inveigling her for prostitution, within the meaning of the State v. Marsh, 158 Minn. 111, 196 N. W. 930. That Liggett may not have had in mind the same sexual offense that defendant had when he took Frances to the Ritz Hotel and told her to go with Liggett to the bedroom is immaterial. It is also immaterial whether or not Liggett consummated the offense for the purpose of which defendant persuaded Frances to enter the bedroom with Liggett.

No error appears in the record to the prejudice of defendant, and the order and judgment are affirmed.

MR. CHIEF JUSTICE GALLAGHER and MR. JUSTICE STONE took no part in the consideration or decision of this case.

MR. JUSTICE PETERSON, having been attorney general when the appeal was taken, took no part in the consideration or decision of the case.